DEVELOPMENT BANK OF AMERICAN SAMOA, Plaintiff

v.

SAM SCANLAN, Inc., FANENE SCANLAN,
and LALOIFI SCANLAN, Defendants

MA'I AFUVAI, Intervenor in Post-Judgment
Execution Proceeding

High Court of American Samoa
Trial Division

CA No. 69-88

August 30, 1989

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Steven H. Watson
 For Defendant, John L. Ward II
 For Intervenor, Charles V. Ala'ilima

On Motion to Intervene in Post-Judgment Execution Proceeding:

The Development Bank sued defendants for the balance due on a loan, and defendants stipulated that judgment be entered against them in the amount of $68,397.98. On December 29, 1988, a writ of execution was issued ordering the Marshal of the High Court to seize and sell property of the defendants in the amount of the judgment. The judgment creditor's instructions to the Marshal specified only one asset, a leasehold interest in "the premises commonly known as the Seaside Garden Club."

The Marshal did not immediately seize the Garden Club, which defendants were then sub-leasing to a partnership whose principal operating officer was Ma'i Afuvai. Instead, by mutual agreement of the Bank, the defendants, and Afuvai, the monthly rent Afuvai had been paying to defendants was thereafter paid directly to the Bank. The Bank remitted $500 monthly to defendant Fanene Scanlan and applied the rest toward the judgment debt.

This arrangement broke down quite dramatically on the evening of June 1, 1989, when Mr. Afuvai, after an argument with Mr. Scanlan, closed the Garden Club and began throwing heavy objects around the premises. Several items were broken including at least one exterior glass door. Counsel for the Bank, driving by the Club on his way to work the next morning, perceived something amiss and posted a guard. The Bank then caused its seizure of the defendants' interest in the Garden Club to be perfected.

The Marshal seized not only the premises but also the Club's inventory, fixtures, equipment, and furniture. Afuvai has petitioned the Court for the return of most of the furniture and equipment, which he

says is his own personal property. Defendants maintain, however, that the furniture and equipment placed in the Garden Club by Afuvai became the property of Sam Scanlan, Inc., in accordance with the terms of the sub-lease to Afuvai.

The document in question does provide that lessee (the Afuvai partnership) was to "renovate and refurnish the interior" of the Club. The "initial costs of renovation, furnitures, equipments and inventories" were to be $30,000 "to be verified by invoices." In exchange for these renovations, lessee was to pay $2500 per month rent rather than some unspecified higher figure. Under the lease, therefore --- contrary to the usual rule whereby only fixtures "permanently attached" to leased premises by a lessee are said to become part of the premises --- the furniture as well as the other items purchased by Afuvai would have become the property of Sam Scanlan, Inc., had the lease run its course.

The lease also provided, however, that if it should be "terminated due to the fault of the lessor then all improvements less depreciated value [would] be reimbursed to lessee." We are convinced that the lease did in fact terminate by the fault of the lessor, several months prior to Mr. Afuvai's inexcusable outburst.

When defendants, by not paying their lawful debt to the Bank, caused a writ of execution to be issued against the leased premises, they breached the covenant of quiet enjoyment which is an essential element of every leasehold agreement. Because the Afuvai lease was unrecorded (and also because it appears to have been a lease only of the building, inventory, and equipment that comprised the Garden Club rather than of the land on which the Club was located) it gave rise only to contractual rights, not to a real interest in the property. Afuvai could have been lawfully evicted at any time after December 29, 1988, with no recourse but to try to collect his damages from the Scanlans. On that day, therefore, Afuvai was constructively evicted from the premises by the fault of the lessor. That the Bank initially chose not to shut down the Club and sell its contents, but instead allowed Afuvai to remain as a tenant at will, is irrelevant to an analysis of his legal relationship with the Scanlan defendants.

The record also reflects other breaches by the Scanlans. Having leased the Club to the Afuvai partners, Fanene Scanlan and some members of his family apparently continued to regard themselves as its proprietors. They demanded drinks on credit, and repeatedly threatened to fire employees who attempted to deny such credit. When part of the

76

Club's roof blew away and Afuvai secured another loose piece of the roof by placing a large rock on top of it, Fanene Scanlan told Afuvai to take the rock down because it was an embarrassment, but refused to fix the roof. Even if the Scanlans had not altogether lost control of the property, Afuvai would have been justified in regarding the lease as at an end well before June 1989.

Afuvai is still the owner, therefore, of the furniture and other improvements he installed, "less depreciated value." Although the actual cost of these improvements is disputed, the expenditure required by the lease was $30,000. At the time of the constructive eviction the lease had run for about 19 1/2 months of its 48-month term. The "depreciated value" owed by lessee upon the premature termination of the lease is therefore 19.5/48 x $30,000, or $12,187.[1] As it happens, this is somewhat less than the amount Afuvai spent (even accepting the Scanlans' estimate of about $6000 for labor costs rather than Afuvai's estimate of $15,000) on the improvements that cannot easily be removed from the building: lumber, paint, doors, interior decorations, and so forth. Afuvai is entitled, therefore, to the return of all items in the Marshal's inventory that are not affixed to the building by bolts, glue, or similar devices. He also remains the owner, in accordance with the lease agreement, of any kitchen equipment purchased by him whether or not it is affixed to the building. The Marshal is directed to return these items to Afuvai.

Whether Afuvai is liable to the Scanlans, or to the Bank, for damage done in the June 1 incident to items not belonging to him, is not before us in this proceeding. Nor do we express any opinion concerning the rights of Afuvai and his partners, if any, in "Garden Club Ltd." as among themselves.

---

[1] Counsel for defendants suggests that the $30,000 should be depreciated only over the first two years of the lease, since the parties were to "review lease price after two (2) years and renegotiate a lease price fair to both parties." Counsel suggests that this term, together with Fanene Scanlan's testimony that a previous tenant had been paying $5000 per month before going out of business, establishes that the $30,000 was fully depreciated over two years. We find this possibility no more or less plausible, however, than that the parties were to negotiate an increase or decrease according to the cost of living, or to the gross receipts of the Club, or to some other factor not in evidence. We know little or nothing about whether the "fair market value" of the premises was $2500, $5000, or some other figure. The lease did not provide for termination after two years if no new rate were negotiated; rather, in that case the $2500 figure was to remain in force for "the full term of this lease." The evidence therefore preponderates in favor of depreciation of the $30,000 over the four years of the lease term.